UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
EDWIN MOLINA,

                         Petitioner,

          - against -

RAUL MALDONADO, in his official capacity
as Warden of the Metropolitan Detention
Center, *et al.*,

                        Respondents.
--------------------------------------------------------x

**MEMORANDUM & ORDER**
26-CV-1405 (PKC)

PAMELA K. CHEN, United States District Judge:

On March 11, 2026, Petitioner Edwin Molina filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  (Pet. Writ. Habeas Corpus ("Pet."), Dkt. 1.)  He argues that his detention by U.S. Immigration and Customs Enforcement ("ICE") violates the Due Process Clause of the Fifth Amendment and the Administrative Procedure Act ("APA").  (*Id.* at 5–8.)  For the following reasons, the Petition is GRANTED, and Respondents are ordered to release Petitioner from custody immediately.

**BACKGROUND**

Petitioner is a citizen of Honduras.  (Pardo-Figueroa Decl., Dkt. 6-1, ¶ 2.)  He entered the United States by crossing the border without inspection in or around June 2000.  (Pet., Dkt. 1, ¶ 1.)  In 2019, he applied for permanent residence/adjustment of status with U.S. Citizenship and Immigration Services ("USCIS"); USCIS denied his application in 2021.  (Pardo-Figueroa Decl., Dkt. 6-1, ¶ 4.)

Petitioner has not been convicted of any crime in the United States.  (*See generally id.*)  In June 2015, Petitioner was arrested by the Newburgh Town Police Department for alleged second-degree trespass in violation of New York Penal Law Section 140.15.  (*Id.* ¶ 3.)  That charge was

dismissed in February 2016. (*Id.*) On October 24, 2025, Petitioner was arrested by the Newburgh Town Police Department for alleged third-degree coercion in violation of New York Penal Law Section 135.60, and for allegedly resisting arrest in violation of New York Penal Law Section 205.30. (*Id.* ¶ 5.)[1] Those charges remain pending. (*Id.*)

On October 27, 2025, ICE officers "approached Petitioner" in Newburgh, New York and arrested him pursuant to a Form I-200, Warrant for Arrest of Alien. (*Id.* ¶ 6; *accord* Pet., Dkt. 1, ¶ 2.) ICE served him with a Form I-862, Notice to Appear, and initiated removal proceedings against him. (Pardo-Figueroa Decl., Dkt. 6-1, ¶ 7.)

On December 2, 2025, Petitioner submitted a written request for voluntary departure, (*id.* ¶ 8), which is a mechanism that enables noncitizens who are "identified by the government as being illegally present in the United States to leave the country of their own accord without being forcibly removed by the government," *Thapa v. Gonzales*, 460 F.3d 323, 327 (2d Cir. 2006).[2] At Petitioner's master calendar hearing the following day, December 3, 2025, an Immigration Judge ("IJ") denied Petitioner's request for voluntary departure and ordered him removed to Honduras. (Pardo-Figueroa Decl., Dkt. 6-1, ¶ 9.) On January 2, 2026, Petitioner appealed the decision to the Board of Immigration Appeals ("BIA"), and on February 19, 2026, he filed a motion to remand with the BIA. (*Id.* ¶¶ 10–11.) Both motions before the BIA remain pending. (*Id.* ¶ 12.)

---

[1] According to Respondents, these charges are based on a complaint that Petitioner had "aggressively approached [the complainant] while she was out for a run and threatened to post intimate videos and pictures of her online." (Pardo-Figueroa Decl., Dkt. 6-1, ¶ 5.)

[2] Voluntary departure is available as an alternative to removal proceedings or before removal proceedings have concluded under 8 U.S.C. § 1229c(a), and after removal proceedings have concluded under 8 U.S.C. § 1229c(b). *See Thapa*, 460 F.3d at 327. Noncitizens benefit from voluntary departure instead of deportation because, among other reasons, it allows them to avoid the "various penalties associated with forced removals," including "ineligibility for readmission for a period of five or ten years, *see* 8 U.S.C. § 1182(a)(9)(A)." *Id.* at 328 (quoting *Lopez-Chavez v. Ashcroft*, 383 F.3d 650, 651 (7th Cir. 2004)).

Petitioner has been in immigration detention since his arrest by ICE on October 27, 2025. (*See* Pet., Dkt. 1, ¶¶ 2, 9; Pardo-Figueroa Decl., Dkt. 6-1, ¶¶ 6, 13.)  He has never received a bond hearing or any other form of individualized custody determination.  (Pet., Dkt. 1, ¶ 2.)  He is currently detained at the Metropolitan Detention Center ("MDC") in Brooklyn, New York.  (*Id.* ¶ 3; Pardo-Figueroa Decl., Dkt. 6-1, ¶ 13.)  Respondents contend that "Petitioner is being detained by ICE under 8 U.S.C. § 1225(b)(2)(A)" ("Section 1225(b)(2)(A)").  (Resp'ts' Response to Order to Show Cause ("Resp."), Dkt. 6, at 2 (citing Pardo-Figueroa Decl., Dkt. 6-1, ¶ 14).)

## DISCUSSION

Respondents concede that "[t]his case turns on ICE's statutory detention authority and whether Petitioner is entitled to a bond hearing," and that the Court "has previously ruled on these central legal issues" in *Yin v. Maldonado*, No. 26-CV-0103 (PKC), 2026 WL 295389 (E.D.N.Y. Feb. 4, 2026), and *R.A.R.R. v. Almodovar*, No. 25-CV-6597 (PKC), 2026 WL 323040 (E.D.N.Y. Feb. 6, 2026)—both of which rejected the same arguments Respondents make here.  (Resp., Dkt. 6, at 1.)[3]  Respondents "acknowledge that these decisions would control the result in this case" if the Court adheres to its prior conclusions.  (*Id.* at 4.)[4]

---

[3] The Court has also adhered to the same or similar reasoning in several other cases.  *See J.R.R. v. Genalo et al.*, No. 26-CV-1245 (PKC), 2026 WL 691803 (E.D.N.Y. Mar. 11, 2026); *Figueroa Ocampo v. Noem et al.*, No. 26-CV-0999 (PKC), 2026 WL 587643 (E.D.N.Y. Mar. 3, 2026); *Colindres v. Tellez et al.*, No. 26-CV-0663 (PKC), 2026 WL 509493 (E.D.N.Y. Feb. 23, 2026); *Ambroladze v. Maldonado et al.*, No. 26-CV-0473 (PKC), 2026 WL 295405 (E.D.N.Y. Feb. 4, 2026); Order Dismissing Case, *Cordova Vera v. Tellez et al.*, No. 26-CV-0018 (PKC) (E.D.N.Y. Jan. 27, 2026); *Galeas Miranda v. Maldonado et al.*, No. 25-CV-6882 (PKC), 2026 WL 25405 (E.D.N.Y. Jan. 5, 2026).

[4] Again, the Court appreciates Respondents' brevity as part of their desire to "conserve judicial and party resources."  (Resp., Dkt. 6, at 1.)  Nonetheless, Respondents' decision to continue making these arrests and detaining noncitizens who were already in the country pursuant to a statutory interpretation that has been almost universally rejected by district courts in this Circuit—rather than waiting for the Second Circuit to weigh in on the relevant legal questions— has exacted an unnecessary and avoidable toll on the resources of the judiciary and Respondents themselves.  *See Barco Mercado v. Francis*, No. 25-CV-6582 (LAK), --- F. Supp. 3d ----, 2025

3

The Court adheres to its prior reasoning and holds that Petitioner, who was already in the country when ICE arrested him, cannot be detained pursuant to Section 1225(b)(2)(A). Section 1225(b)(2)(A) requires mandatory detention of noncitizens "seeking admission" while their removal proceedings are pending (absent certain exceptions inapplicable here).[5]  8 U.S.C. § 1225(b)(2)(A); *accord Jennings*, 583 U.S. at 289 (explaining that "U.S. immigration law authorizes the Government to detain certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2)," and, in contrast, authorizes the Government to detain "certain aliens *already in the country* pending the outcome of their removal proceedings under §§ 1226(a) and (c)" (emphasis added)).  The overwhelming majority of courts in this District and across the country have found that noncitizens like Petitioner—who were detained by ICE after living in the United States for years—are not "seeking admission" and therefore cannot be detained pursuant to Section 1225(b)(2)(A).  *See, e.g.*, *Barco Mercado*, 2025 WL 3295903, at *4 ("By a recent count, the central issue in this case—the administration's new position that *all* noncitizens who came into the United States illegally, but since have been living in the United States, *must be detained* until their removal proceedings are completed—has been challenged in at least 362 cases in federal district courts.  The challengers have prevailed, either on a preliminary or final basis, in 350 of

---

WL 3295903, at *13–14 (S.D.N.Y. Nov. 26, 2025) (documenting overwhelming rejection of Respondents' arguments in this Circuit, beginning in the summer of 2025).

[5] Specifically, mandatory detention does not apply if the noncitizen is "clearly and beyond a doubt entitled to be admitted," *see* 8 U.S.C. § 1225(b)(2)(A), or if the Secretary of Homeland Security discretionarily and temporarily paroles them from custody for "urgent humanitarian reasons or significant public benefit," *id.* § 1182(d)(5)(A). *See Jennings v. Rodriguez*, 583 U.S. 281, 300 (2018) (explaining that the "express exception to detention" under 8 U.S.C. § 1182(d)(5)(A) "implies that there are no *other* circumstances under which aliens detained under § 1225(b) may be released" under the statutory scheme).

those cases decided by over 160 different judges sitting in about fifty different courts spread across the United States."); *id.* at *13–14 (collecting cases).[6]

Rather, Petitioner's detention is governed by 8 U.S.C. § 1226(a) ("Section 1226(a)"), which provides that, "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Detention under Section 1226(a) is discretionary; immigration authorities "may release" the non-citizen on bond. *Id.* § 1226(a)(2). "[T]he discretionary authority in [Section] 1226(a) requires an individualized bond determination before a noncitizen may be taken into custody." *Hyppolite v. Noem*, 808 F. Supp. 3d 474, 485 (E.D.N.Y. 2025) (citing *Velesaca v. Decker*, 458 F. Supp. 3d 224, 241 (S.D.N.Y. 2020)); *accord Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 494 (S.D.N.Y. 2025) ("[I]t is clear that [Section] 1226(a) requires some exercise of discretion when determining whether or not to detain a noncitizen in the first instance.").

Here, Respondents effectively admit that they *did not exercise discretion* to detain Petitioner; rather, they detained him under the incorrect assertion that his detention was mandatory pursuant to Section 1225(b)(2)(A). (*See* Resp., Dkt. 6, at 2 (stating that Petitioner is subject to "mandatory detention" and is being detained under Section 1225(b)(2)(A)).) "Such an assertion is precisely the *opposite* of an exercise of discretion." *Lopez Benitez*, 795 F. Supp. 3d at 495. Respondents detained Petitioner pursuant to the wrong statute, without any individualized custody determination, prior notice, or opportunity to be heard. Accordingly, for the reasons set forth in

---

[6] Petitioner also cannot be detained under 8 U.S.C. § 1231 ("Section 1231"), which governs detention during the "removal period" after a noncitizen has been ordered removed, because Petitioner's removal order is not yet administratively final. *See Colindres*, 2026 WL 509493, at *2 (finding that the petitioner could not be mandatorily detained under Section 1231 while his appeal was pending before the BIA); (Pardo-Figueroa Decl., Dkt. 6-1, ¶ 12 ("As of this writing, Petitioner's appeal and motion to remand remain[] pending with the BIA.")).

the Court's prior decisions, and hundreds of other decisions across the country, Respondents' actions violated Petitioner's procedural due process rights. *See, e.g.*, *R.A.R.R.*, 2026 WL 323040, at *4–5 (applying balancing test of *Mathews v. Eldridge*, 424 U.S. 319 (1976), and concluding that the petitioner's detention under Section 1226(a) violated his procedural due process rights where Respondents erroneously treated the petitioner as subject to mandatory detention under Section 1225(b)); *see also Barco Mercado*, 2025 WL 3295903, at *12 (holding that the petitioner's detention "pursuant to the wrong statute violated due process"); *M.K. v. Arteta*, No. 25-CV-9918 (LAK), 2025 WL 3720779, at *8–9 (S.D.N.Y. Dec. 23, 2025) ("Having determined that [Section 1225(b)(1)] is inapplicable to [an individual living in the United States for over two years], the Court concludes that [the petitioner's] detention pursuant to the wrong statute is unlawful."); *Yao v. Almodovar*, No. 25-CV-9982 (PAE), 2025 WL 3653433, at *11 (S.D.N.Y. Dec. 17, 2025) (concluding that "ICE's discretion-free detention of [the petitioner] abridged his rights under [Section] 1226 and violated due process," and compiling cases reaching the same conclusion).[7]

While Respondents assert, without citing any authority, that a bond hearing is a more appropriate remedy than immediate release "given Petitioner's criminal history," (Resp., Dkt. 6, at 4), the Court disagrees. This is not a situation in which the petitioner has prior convictions or an extensive criminal record. *See Gimenez-Dominguez v. Francis*, No. 26-CV-1438 (JPO), 2026 WL 538682, at *2 (S.D.N.Y. Feb. 26, 2026) (distinguishing cases where petitioners had prior convictions or extensive criminal records with the instant case where the petitioner had "only a single arrest, where the charges were later dismissed"). Petitioner's "criminal history" is minimal, with zero convictions and only two arrests, where the charges for the first arrest were dropped

---

[7] Having concluded that Petitioner's detention violates his procedural due process rights, the Court does not reach Petitioner's arguments regarding substantive due process or the APA.

entirely and the charges for the second arrest are still pending.[8] (*See* Pardo-Figueroa Decl., Dkt. 6-1, ¶¶ 3, 5.) The Court therefore sees no reason to depart from its prior conclusion that the appropriate remedy for Respondents' violation of procedural due process is Petitioner's immediate release, not an order directing Respondents to provide him with a bond hearing. *See, e.g.*, *Colindres*, 2026 WL 509493, at \*3; *see also Yao*, 2025 WL 3653433, at \*11 ("A bond hearing after the fact, by definition, would not and cannot cure [the] constitutional violation. Although [the petitioner's] release today cannot cure his loss of liberty . . . , this remedy, relative to the procedural one of ordering a bond hearing, is the one that comes closest to doing so."); *id.* at \*12 (compiling cases holding the same); *Y-C- v. Genalo*, No. 25-CV-6558 (NCM), 2025 WL 3653496, at \*7 (E.D.N.Y. Dec. 17, 2025) (concluding that "no relief short of petitioner's immediate release would be appropriate or sufficient" in the case in light of the constitutional violations suffered).

## CONCLUSION

The Petition for Writ of Habeas Corpus, (Pet., Dkt. 1), is GRANTED. Respondents are ordered to release Petitioner from custody immediately and no later than within 24 hours of this Order. Respondents are ordered to release Petitioner subject to the conditions at which he was at liberty before he was detained, without any additional constraints on his liberty. Respondents are further directed to return to Petitioner any and all funds or property seized from Petitioner at the time of his arrest. Respondents are directed to certify compliance with the Court's Order by filing a letter on the docket no later than 6:00 p.m. tomorrow, March 18, 2026.

---

[8] The Court recognizes that based on the conduct alleged in Petitioner's pending criminal matter, there might be evidence that Petitioner presents a risk of danger to the community that warrants his detention during his removal proceedings. However, that is a determination that must be made, if ever, by Respondents using the proper procedure, which is an individualized custody determination pursuant to Section 1226(a).

The Court further orders that Respondents may not administratively recharacterize the release granted by this Order as grounds to impose conditions or re-impose existing conditions in conjunction with release (including release on recognizance or similar instruments), without prior notice to and authorization from the Court.  Petitioner must not be re-detained by Respondents without notice and an opportunity to be heard at a pre-deprivation bond hearing before a neutral decisionmaker, at which Respondents will have the burden of showing that Petitioner's re-detention is authorized under a statutory authority other than Section 1225(b)(2)(A).

Petitioner's deadline to apply for fees under the Equal Access to Justice Act is within thirty (30) days of a final judgment in this action, which, if Respondents do not appeal, will be April 16, 2026.  *See* 28 U.S.C. § 2412(d)(1)(B).  The Clerk of Court is respectfully directed to enter judgment consistent with this Order and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 17, 2026
       Brooklyn, New York